**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**


**ACADEMY HEALTH CENTER, INC.
f/k/a ADVENTIST HEALTH CENTER, INC.**      **PLAINTIFF/COUNTER-DEFENDANT**

**VERSUS**                              **CIVIL ACTION NO. 2:10cv123-KS-MTP**


**HYPERION FOUNDATION, INC.;
ALTACARE MANAGEMENT
CORPORATION**                       **DEFENDANTS/COUNTER-PLAINTIFFS**


**DOUGLAS K. MITTLEIDER; LONG TERM
CARE SERVICES, INC.; HARRY M. CLARK;
AND JOHN DOES 1-25**                             **DEFENDANTS**


**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on a Motion for Summary Judgment on Counterclaim **[#101]** filed on behalf of the Plaintiff, Academy Health Center, Inc.  The Court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file, and being fully advised in the premises, finds that the motion is well taken and should be granted.  The Court specifically finds as follows:


**<u>BACKGROUND</u>**

Academy Health Center, Inc. ("AHC")  is the owner and lessor of a nursing facility that is currently operated by Hyperion Foundation, Inc., d/b/a Oxford Health &

Rehabilitation Center ("Hyperion")[1].  The facility is a 120-bed nursing facility located at 6428 U.S. Highway 11, Lumberton, Mississippi ("the Facility").  On January 2, 2006, AHC executed a Lease Agreement with Hyperion.  As per the terms of the Lease Agreement, it was made effective as of October 1, 2005.  As part of the terms, conditions, and provisions of the Lease Agreement, Hyperion assumed the operations of the Facility and all rights and authorities to operate the Facility and receive and accept payments on behalf of the Facility and its residents for services rendered to those residents.

As of June 27, 2008, AHC alleges that Hyperion had failed to pay rent and accumulated interest to AHC in the amount of $557, 477.54.  Pursuant to a letter from counsel for AHC, AHC asserted its right to terminate the Lease Agreement pursuant to Sections 20(a) and (b) of the Agreement.  AHC demanded payment in full within 30 days of Hyperion's receipt of the June 27, 2008 letter.  That letter also provided notice that AHC demanded that Hyperion vacate the facility by noon on August 1, 2008.

On July 2, 2008, Hyperion responded to AHC's June 27, 2008 letter.  Hyperion rejected AHC's assertion that it was in arrears on rent payments and that it owed any past due rents.  Hyperion also asserted that it was not in default under the Lease Agreement and refused to vacate the facility.

On July 15, 2008, AHC filed a Motion and/or Affidavit to Remove Tenant in the Justice Court of Lamar County, Mississippi ("the eviction motion") in an effort to evict Hyperion from the premises and terminate the relationship between Hyperion and AHC

---

[1]  Any reference to "Hyperion" shall mean, collectively, all Defendants/Counter-Plaintiffs.

due to Hyperion's alleged failure to pay rent.  On August 5, 2008, one day before the scheduled hearing on AHC's eviction motion, Hyperion filed a Petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi ("the bankruptcy court"), Case No. 08-51288NPO.

AHC brought an adversary proceeding in the bankruptcy matter, Adversary Proceeding No. 09-05043-NPO.  After prolonged litigation, on January 7, 2010, the bankruptcy court entered an Order ("the Order") granting Hyperion's Motion to Approve Compelled Compromise and Settlement with Academy Health Center, Inc., pursuant to Rule 9019 of the Bankruptcy Rules of Procedure ("the Bankruptcy Order").

On February 9, 2010, the United States Trustee filed its Motion to Dismiss Hyperion's bankruptcy case on the grounds that Hyperion had failed to file a disclosure statement and a plan of reorganization, failed to file all required monthly operating reports, and failed to pay all fees assessed pursuant to Chapter 123 of Title 28.  By Agreed Order dated March 22, 2010, the bankruptcy court granted the U.S. Trustee's Motion to Dismiss Hyperion's bankruptcy case.  In the Agreed Order, the bankruptcy court stated that it "shall" retain jurisdiction, post-dismissal, for enforcing and resolving disputes of any kind related to its Order granting Hyperion's Motion to Approve Compelled Compromise and Settlement with AHC.

On May 7, 2010, the Centers for Medicare & Medicaid Services ("CMS") published notice in the Hattiesburg American newspaper that the "provider agreement" between Oxford Health & Rehabilitation Center and the Secretary of the Department of Health & Human Services was to be terminated on May 23, 2010 because Oxford Health & Rehabilitation Center (Hyperion) was not in compliance with the Medicare

requirements for participation.

On May 14, 2010, AHC filed its original Complaint herein for Temporary Restraining Order, Declaratory Judgment, Permanent Injunction, and Damages.  The Complaint sought, among other relief, an injunction to immediately allow AHC to place temporary management in the Facility in hopes of preventing immediate harm to AHC's asset that was scheduled to occur on May 23, 2010, as set forth in the CMS publication.  On May 19, 2010, this Court ordered a stay of this action for ninety days during which AHC and the Defendants could agree upon and select an independent person "to monitor the regulatory actions of the health care facility involved in this action."

On June 25, 2010, AHC filed its Motion to Enforce the Bankruptcy Order in the Bankruptcy Court for the Southern District of Mississippi.  On November 19, 2010, AHC filed its First Amended Complaint herein alleging it is entitled to take possession of the Facility due to Hyperion's breach of the Bankruptcy Order and numerous breaches of the Lease Agreement.

On December 20, 2010, Hyperion filed its Answer and Counterclaim in this civil action, asserting (1) that AHC breached the Lease Agreement by failing to give notice under the Lease Agreement, Paragraph 38 Resolution of Dispute; (2) that AHC breached the duty of good faith and fair dealing by failing to give notice under the Lease Agreement, Paragraph 38 Resolution of Dispute; (3) that AHC tortiously interfered with Hyperion's contractual relations with certain creditors; (4) that AHC tortiously interfered with Hyperion's business relations with certain creditors; and (5) that AHC did not abide by the stay ordered by this Court on May 19, 2010.

-4-

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law

-5-

will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## ANALYSIS

AHC has moved for summary judgment on Counts I & II – Breach of Contract and Breach of the Duty of Good Faith & Fair Dealing set forth in Hyperion's Counter-claim.  As part of that motion, AHC has first addresses its alleged failure to give notice of the original Complaint for temporary restraining order, declaratory judgment, permanent injunction and damages filed in this action.

As stated, AHC filed its original Complaint herein on May 14, 2010.  Hyperion's

Counterclaim asserts that AHC should have followed the terms of Section 38 of the Lease Agreement and provided it with notice before filing the Complaint herein in order to allow it thirty days to resolve the "dispute."  Section 38 of the Lease Agreement provides as follows:

> **Resolution of Dispute**. In the event of any dispute or disagreement between the parties hereto affecting the parties' respective rights in this Agreement, the disputing party shall set forth its position and disagreement in writing and give written notice of the same to the other party that such dispute exists. The parties will make a good faith effort to resolve the dispute or disagreement. If the dispute is not resolved at the expiration of thirty (30) days from the time such notice is received, then the entire matter shall be submitted to arbitration as set forth in Section 39 below.

AHC contends that the "dispute" that triggered the Complaint did not exist between Hyperion and AHC but was between Hyperion and CMS.  Further, AHC argues the immediacy of the situation and the possibility that AHC could lose its only asset forced AHC to take any and all actions necessary to protect its interest in the Facility.

As stated, on May 7, 2010, the CMS published notice in the Hattiesburg American newspaper that the "provider agreement" between Oxford Health & Rehabilitation Center and the Secretary of the Department of Health & Human Services was to be terminated on May 23, 2010 because Oxford Health & Rehabilitation Center was not in compliance with the Medicare requirements for participation.  This publication apparently resulted from a survey conducted April 26 through April 30, 2010, by the Mississippi State Department of Health as the state survey agency for CMS.

As a result of the survey findings, termination of the provider agreement was a remedy imposed against Hyperion as the result of the existence of Immediate Jeopardy

deficiencies cited against Hyperion during a survey conducted at the Facility on April 26-30, 2010.  Immediate Jeopardy is defined as "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident."  42 C.F.R. §489.3.

In the case of an Involuntary Termination of a Medicare provider agreement, as CMS stated would occur in the May 7 publication, the Facility must discharge all of its residents and in essence shut down.  The provider may apply for reinstatement, but a new agreement with that provider will not be accepted unless CMS finds that the reason for termination has been removed and there is reasonable assurance that it will not recur.  Soc. Sec. Act §1866(c)(1); 42 C.F.R. §489.57.  Before a new Medicare number will be issued, the provider is required to operate for a certain "reasonable assurance" period of time without recurrence of the deficiencies which were the basis for the termination.

According to AHC, termination of the Medicare Provider Agreement would also likely have resulted in the termination of the agreement with the Mississippi Division of Medicaid.  Under Miss. Code Ann. §43-13-121(7), the Mississippi Division of Medicaid may revoke enrollment in Medicaid for any provider who is terminated from the Medicare program.  AHC contends that closure of the Facility or loss of its right to participation in the Medicare and Medicaid programs would have caused immediate and irreparable injury, loss, and damage to the community, the residents of the Facility, the employees, and AHC as the Facility's owner.

Hyperion retorts that AHC is attempting to again misstate and misinterpret the CMS notice.  Hyperion insists the CMS notice in no way jeopardized the license of

Hyperion to operate the facility in that the CMS notice pertained to the provider agreement.  According to Hyperion, there are no obligations under the Lease with regard to provider agreements, and further, even if it is assumed for sake of argument that termination of a provider agreement equates to termination of a license, which is denied, Hyperion's license was never terminated.  In fact, Hyperion asserts that it has continuously retained its CMS license to date.

In its defense, Hyperion contends that AHC was aware that CMS routinely provided notices to healthcare facilities regarding deficiencies and that AHC also was aware that in the vast majority of these cases, corrective actions were taken and the deficiencies were corrected and removed.  Hyperion states that rather than working with it, AHC, without any notice, instituted this action.  Hyperion further argues that had AHC bothered to notify it prior to filing this action, it would have learned that the deficiencies were corrected and the CMS issue was resolved.

Hyperion argues that AHC's notice obligation pursuant to Section 38 of the Lease is absolute.  There are no exceptions under the Lease with regard to providing notice and that AHC was not excused from providing written notice to Hyperion because it assumed that Hyperion could not have promptly resolved the issue with CMS.  Hyperion further contends that AHC's argument that it was impossible to provide notice based on the time limits referenced in the CMS notice is without merit, and, at the very least, Hyperion's response in this regard constitutes a genuine issue of material fact.

Likewise, Hyperion asserts that AHC's argument that it was excused from providing notice to Hyperion as a result of Hyperion's own conduct is based on the false

assumption that the CMS notice represented a final termination of Hyperion's provider agreement.  As stated above, Hyperion contends the notice did not result in termination of Hyperion's provider agreement with CMS or its license with CMS.  Hyperion again points out that it has never lost its provider agreement or license with CMS nor as it ever done anything to prevent its performance under the Lease with respect to its licensing requirements.

AHC insists that according to the CMS publication, the Facility faced possible closure on May 23, 2010, hence there were only 16 days for AHC to take action to protect its asset.  AHC contends there was no opportunity to provide a "written notice" setting forth AHC's "position and disagreement", nor was there time to make a "good faith effort to resolve the dispute or disagreement" as set forth in Section 38 of the Lease Agreement.  According to AHC, CMS controlled what was to occur with the Facility and AHC was justified in taking steps to protect its asset.

Further, and most importantly, upon learning of the CMS notice, AHC board member Melvin Eisele went to the Facility and asked for a copy of the findings of the survey and any documentation related to the decision to terminate the CMS provider agreement.  The Hyperion employees refused to provide the requested documents.  At that point AHC argues it had no choice but to seek judicial intervention in hopes of protecting its asset and possibly preventing the closure of the facility.

Contrary to Hyperion's assertions, there is no proof in the record that the publication by CMS in the Hattiesburg American was at all "routine," nor is there any proof that AHC considered that such notice was "routine."  Unsupported statements do not raise genuine issues of material fact.

Further, Hyperion argues, without any evidentiary support, that if AHC had "bothered to notify Hyperion, it would have learned that the deficiencies were corrected and the CMS issue was resolved."   Conveniently, Hyperion seems to ignore the fact that AHC Board Member, Melvin Eisele, personally went to the Facility to obtain information related to the notice and that request was refused.  Additionally, Hyperion's own pleading entitled, Notice of Status, reveals that neither party had knowledge that the threat to terminate the Provider Agreement with CMS, which could also have resulted in similar action by the Mississippi Department of Health and Licensure, was not lifted until a conference call that occurred on May 18, 2010, the same date the parties met before this Court on AHC's Motion for Temporary Injunction.

Under Mississippi law, when the activities of the opposite party prevent performance of a contract, the performance is excused.  *Day v. Day*, 28 So.3d 672, 676 (Miss. Ct. App. 2010).  "Performance of a contract is excused, or may not be taken advantage of, when it is prevented by the acts of the opposite party."  *Id.* (quoting 17B C.J.S. Contracts 528 (1999)).  Further:

> It is recognized as a general principle that if one party to a contract wrongfully prevents the other party from performance, or makes it impossible for him to perform his obligations under the contract, the offending party will not be permitted to recover damages for non-performance and thereby take advantage of his own wrongful acts.

*Owens v. William H. Banks Warehouses, Inc.*, 202 F.2d 689, 692 (5th Cir. 1953).

Hyperion's acts in allegedly failing to operate the Facility in compliance with federal law, failing to notify AHC that the survey in April had resulted in an Immediate Jeopardy finding by CMS, and failing to notify AHC of the publication in the Hattiesburg American made it impossible for AHC to comply with Section 38 of the Lease

Agreement and caused AHC to file the Complaint.

The original Complaint herein sought an injunction to allow AHC to place temporary management in the Facility in hopes of preventing the immediate harm that was scheduled to occur on May 23, 2010.  AHC did not have 30 days to wait for Hyperion to resolve the matter with CMS.  Hyperion cannot take advantage of the performance requirements of the Lease Agreement when its own acts prevented AHC from complying with it.  The Court therefore finds that AHC is entitled to summary judgment on Hyperion's claim that AHC breached the Lease Agreement in bringing this action before giving notice under Section 38 of the Lease Agreement.

Hyperion also claims that AHC breached Section 38 of the Lease Agreement by bringing its Motion to Enforce the Bankruptcy Order in the Bankruptcy Court "without the notice and resolution procedure required by Paragraph 38 of the Lease Agreement."  Counterclaim, par. 3.  AHC contends that this allegation is contrary to the language of the Bankruptcy Order.  Pertinent terms of the Order are as follows:

B)      Hyperion shall pay AHC $325,000.00 for complete and full satisfaction of all claims. The payment shall be paid as follows:

*****

(iii)    $125,000.00 shall be paid by equal monthly payments over a period of eighteen (18) months ($6,944.44). The first monthly payment will be due in January 2010.

C)      Hyperion shall continue to timely pay the regular monthly rent payments of $36,000.00.

D)      The current lease will continue under its terms with an amendment which provides that in the future, if the Debtor [Hyperion] is delinquent in a monthly rent payment or a settlement payment to AHC at any time for any reason for more than ten (10) days, the

-13-

> lease will automatically be terminated. The Debtor [Hyperion] shall waive any notice requirements of any kind and will turn the facility back over to AHC. In other words, no eviction notices and no litigation of any kind if the Debtor [Hyperion] fails to make timely lease payments or a settlement payment. Further, there shall be continued specific performance requirements of the lease.

Bankruptcy Order, Adversary Proceeding No. 09-05043-NPO.

The Motion to enforce the Bankruptcy Order was filed in the Bankruptcy Court on June 25, 2010.  The motion was based upon Hyperion's alleged failure to pay rent and settlement payments in accordance with the above-quoted provisions of the Bankruptcy Order.  As set forth in the Motion, Hyperion allegedly violated the Order by failing to pay the May and June, 2010 rent and settlement payments within 10 days of the due date. Further, AHC insists that any notice requirements set forth in the Lease Agreement related to rent payments were amended and superceded by the language of the Bankruptcy Order.

In support of its Motion for Summary Judgment, AHC asserts that Hyperion admitted that the May, 2010 payments were late in its response to the Bankruptcy Motion.  Hyperion argues that it did not admit that the May, 2010 payments were late in its response to the Bankruptcy Motion.  However, attached as Exhibit "Q" to AHC's Motion herein is the Answer and Response filed by Hyperion to the Bankruptcy Motion. Paragraphs 22 and 23 in the Answer and Response address the allegation in the motion that the May checks were returned for insufficient funds and that AHC did not receive the rent or settlement payments on or before May 15 as required by the Bankruptcy Order.  Paragraph 22 states as follows:

> Hyperion admits that the check mentioned in this paragraph was returned, but it was returned as a result of a glitch at Hyperion's bank, which was

not the fault of Hyperion. Hyperion made reasonable efforts to replace the improperly returned check.

As set forth in the Bankruptcy Order, Judge Olack specifically retained jurisdiction over any disputes related to the Bankruptcy Order.  At the hearing conducted on August 10, 2010, however, Judge Olack abstained from ruling on AHC's Motion and authorized AHC to bring its claims set forth therein before this Court.

The allegation that AHC violated the notice requirements of Section 38 of the Lease Agreement lack any legal basis.  The Bankruptcy Order plainly states that if payment is late "for any reason for more than ten (10) days, the lease will automatically be terminated."  The order further amends the Lease Agreement as follows, "The Debtor [Hyperion] shall waive any notice requirements of any kind and will turn the facility back over to AHC.  In other words, no eviction notices and no litigation of any kind if the Debtor [Hyperion] fails to make timely lease payments or a settlement payment."   Any notice requirements set forth in the Lease Agreement were clearly amended and superseded by the plain and unambiguous language and requirements of the Bankruptcy Order.   The Court finds that AHC is entitled to summary judgment on Hyperion's claim that AHC breached the Lease Agreement in bringing its Motion to Enforce the Bankruptcy Court's Order.

Hyperion also claims that AHC's actions to enforce the Bankruptcy Order in the Bankruptcy Court violated the stay of this action ordered by this Court on May 19, 2010. The Order placed a stay "on the Motion for Temporary Restraining Order" for ninety days during which AHC and the Defendants could agree upon and select an independent person "to monitor the regulatory actions of the health care facility involved

-15-

in this action."

AHC brought its Motion to Enforce the Bankruptcy Order in the Bankruptcy Court on June 25, 2010 in accordance with that court's Agreed Order on United States Trustee's Motion to Dismiss.  As stated above, that Agreed Order provided that the Bankruptcy Court "shall retain jurisdiction post-dismissal of enforcing and resolving disputes of any kind related to the Order . . . ."

AHC points out that at the time this Court ordered the stay on May 19, 2010, AHC had not asserted any claims in this litigation related to Hyperion's alleged failure to pay rent and settlement payments pursuant to the terms of the Bankruptcy Order and the Lease Agreement as these claims were a separate and distinct cause of action against Hyperion.  In fact, AHC did not assert these claims in this action until the Bankruptcy Court authorized AHC to do so.  AHC did not amend its Complaint to assert those claims until November 19, 2010, long after the stay had expired.

The Court finds that Hyperion has failed to raise any genuine issue of material fact with respect to this issue and have simply restated the allegations of their Counterclaim, thus, AHC is entitled to summary judgment on the allegation that AHC violated this Court's previous Order Staying Case.

AHC moved for summary judgment on the allegations in the Counterclaim that AHC is liable for tortious interference with contractual and/or business relations of Hyperion.  Hyperion has combined its response to the Motion for Summary Judgment on the question of whether AHC tortiously interfered with its contractual and/or business relations with the separate cause of action for breach of good faith and fair dealing. The Court will address them separately,

Counts III and IV of the Counterclaim allege that AHC interfered with the contractual and/or business relations of Hyperion by filing this lawsuit.  As paragraph 13 of the Counterclaim states, "as a direct and proximate result of the Counter-Defendant's legal proceedings against the Counter-Plaintiffs, certain Creditors of the Counter-Plaintiff's have placed Counter-Plaintiffs on Notice of Default."  The identical language is found in paragraph 15 under Count IV of the Counterclaim.

In order to prove tortious interference with contractual relations, a plaintiff must prove that an enforceable obligation existed between the plaintiff and another party. *Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998) (quoting *Cenac v. Murray*, 609 So. 2d 1257, 1268-69 (Miss. 1992)).  A plaintiff must also prove that the contract would have been performed but for the alleged interference.  *Id.*

If Hyperion can first prove that an enforceable obligation existed, it must also prove that AHC's actions in bringing this civil action and the Motion to Enforce the Bankruptcy Court's Order:

    (1)    were intentional and willful;
    (2)    were calculated to cause damage to Counter-Plaintiffs in their lawful business;
    (3)    were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of AHC (which constitutes malice);and
    (4)    that actual damage and loss resulted.

*Id.*

The Counterclaim asserts that AHC interfered with contractual relations with Northern "and/or other creditors."  However, Northern is the only creditor identified by Hyperion.  The intent required to prove tortious interference with contractual relations is inferred when the defendant knows of the existence of a contract and does a wrongful

-17-

act without legal or social justification that he is certain or substantially certain will result in interference with the contract. *Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1099 (Miss. 2005) (citing *Par Indus.*, 708 So. 2d at 48). More than basic awareness of a contractual relationship between two contracting parties is necessary to constitute a finding of intentional interference with a contract. *Id.* AHC argues that Hyperion has offered no proof AHC had the requisite intent because it has not shown that AHC had any knowledge of Hyperion's contractual relationship with Northern. Indeed, there has been no proof offered that Hyperion ever notified AHC of the existence of Hyperion's contract with Northern.

Further, the Court finds that AHC's actions were in the exercise of a legitimate interest or right. Even if the litigation resulted in the alleged notice of default on the contract between Northern and Hyperion, the exercise of AHC's legitimate rights constitutes a privileged interference. As the courts that have considered this issue have held, "It is equally established that the interference complained of must be wrongful in order to be actionable and that any interference is not wrongful and actionable if undertaken by someone in the exercise of a legitimate interest or right, which constitutes privileged interference." *Scruggs*, 910 So. 2d at 1099 (quoting *Martin v. Texaco, Inc.*, 304 F.Supp. 498, 502 (S.D. Miss. 1969)).

AHC's actions were in the exercise of a legitimate interest or right. There has been no proof offered that AHC brought the instant civil action or the Motion to Enforce the Bankruptcy Order with the unlawful purpose of causing damage and loss to the contractual relationship between Hyperion and Northern or anyone else. Instead, the proof shows that AHC brought both actions to protect its rights and interests in the

-18-

facility and to enforce its rights pursuant to the Order of the Bankruptcy Court as well as the terms of the Lease Agreement.

Hyperion has offered no proof that AHC had knowledge of the Northern contract, much less the requisite willful intent to interfere with Hyperion's contractual relationship with Northern.  AHC's actions constitute the valid pursuit of its rights and interests in bringing the instant civil action and the Motion to Enforce the Bankruptcy Court's Order. For the foregoing reasons, AHC is entitled to summary judgment on Hyperion's claim that AHC tortiously interfered with Hyperion's contractual relations.

Further, Hyperion's claim for tortious interference with business relations must fail also.  The elements of tortious interference with business relations are identical to those of tortious interference with contractual relations.  *Par Indus.*, 708 So. 2d at 48-49 (citing *MBF Corp. v. Century Business Communications, Inc.*, 663 So. 2d 595, 598 (Miss. 1995); *Nichols v. Tri-State Brick and Tile Co., Inc.*, 608 So. 2d 324, 328 (Miss. 1992)).  "The same legal standard with reference to the element of intent is applicable to either claim for tortious interference with contract or with business relations."  *Id.* Therefore, for the reasons set forth above, AHC is entitled to summary judgment on Hyperion's claim that AHC tortiously interfered with its business relations as the only business relation identified by Hyperion is the relation with Northern.

Finally, Hyperion claims that AHC breached the duty of good faith and fair dealing as required by law in the performance of every contract in bringing this action and in attempting to enforce the Bankruptcy Order in the Bankruptcy Court.  In Mississippi, all contracts contain an implied covenant of good faith and fair dealing. *Mann v. Amer. Fed. Life Ins. Co.*, 146 F.3d 868, 1998 WL 327238, at *2 (5th Cir. 1998)

-19-

(citing *Morris v. Malone*, 546 So. 2d 969, 971 (Miss. 1989); *UHS-Qualicare v. Gulf Coast Community Hospital*, 525 So. 2d 746, 757 (Miss. 1987)); *see also Stewart v. CMAC Mortgage, LLC*, No. 2:10-cv-00149-DCB-JMR, 2011 WL 1296887, at *5 (S.D. Miss. Mar. 31, 2011) (quoting *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 405 (Miss. 1997). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murry*, 609 So2d at 1272.

The Court finds that AHC's actions in pursuing its rights according to the terms of the Lease Agreement and Bankruptcy Order are not the sort of unreasonable, indecent, and unfair actions that would constitute a breach of the duty of good faith and fair dealing. For instance, in *Cenac*, the court found that the defendant Murry had engaged in a "bizarre, abusive, aberrant, and intimidating" pattern of behavior in an attempt to force the plaintiffs to vacate a store they had purchased from Murry, allowing Murry to foreclose on the store and retain all up-front payments made. 609 So.2d at 1272-73. Murry fired guns at the plaintiffs, insulted and mocked them and their customers, followed and videotaped the plaintiffs, and roamed the neighborhood shirtless while pounding his chest and laughing loudly. *Id.* at 1262-66.

In an opinion more closely analogous to the instant case, the Fifth Circuit Court of Appeals found the defendants' actions did not rise to the level of indecency, unfairness, or unreasonableness that was present in *Cenac*. In *Mann v. Amer. Fed.*

*Life Ins. Co.*, 146 F.3d 868, 1998 WL 327238, at *3 (5th Cir. 1998), the defendants loaned the plaintiff money to purchase two apartment complexes and made a residential loan to the plaintiff.  *Id.* at *1.  The plaintiff fell into default on monthly payments on the residential loan.  *Id.*  The plaintiff also failed to pay ad valorem taxes on the apartment properties.  *Id.*  The defendants instituted foreclosure proceedings on the apartment complexes.  *Id.*  The plaintiff asserted several claims against the defendants, including a claim that they had breached the covenant of good faith and fair dealing in instituting foreclosure proceedings.  *Id.*  The court found that the defendants' actions were reasonable where they acted as typical creditors in foreclosing on a loan when the debtor defaulted on the terms of the loan.  *Id.* at *3.  The Fifth Circuit upheld the district court's grant of summary judgment in favor of the defendants.  *Id.* at *4.

The Court finds that In the instant case, AHC's actions in protecting its rights and interests in the facility in this Court and in the Bankruptcy Court are equivalent to the actions of the defendants in *Mann*, not the unreasonable acts of the defendant in *Cenac*.  AHC originally brought the instant action for an alleged breach of the Lease Agreement.  Additionally, AHC acted to enforce the Bankruptcy Order pursuant to the terms of that order and the March 22, 2010 Agreed Order that dismissed Hyperion's bankruptcy proceeding.  The Court ultimately concludes that AHC has acted as a typical landlord in attempting to protect its rights and interests in the facility.  For the foregoing reasons, AHC is entitled to summary judgment on Hyperion's claim that AHC has breached the implied covenant of good faith and fair dealing.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment on Counterclaim **[#101]** filed on behalf of the Plaintiff, Academy Health Center, Inc. is granted and the Counterclaim asserted by the Defendants/Counter-Plaintiffs is dismissed with prejudice.  A separate judgement shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 16th day of February, 2012.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE